**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN HASSETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 14592** |
| | ) | |
| **UNITED AIRLINES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Hassett has filed suit against his employer, United Airlines, Inc., for alleged

violations of Title VII of the Civil Rights Act of 1964 and the Arizona Civil Rights Act

(ACRA) related to United's COVID-19 vaccination policies. United moved to dismiss the

complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Court granted the motion. Hassett now has moved for leave to file a second

amended complaint. For the following reasons, the Court grants Hassett's motion in

part.

### Background

The Court assumes familiarity with the facts of this case and its ruling on United's

previous motion to dismiss. *See Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2024

WL 1556300 (N.D. Ill. Apr. 10, 2024). Hassett is a pilot employed by United. On August

6, 2021, United announced that all employees would be required to be vaccinated

against COVID-19 or face termination. On August 15, Hassett requested a religious

exemption from the vaccination requirement.  United requested additional information

from Hassett, which he provided.  Sometime between September 9 and September 11,

United notified Hassett that it had "approved" his exemption and "that he would be

placed on unpaid leave without benefits in October 2021 for up to 72 months at which

time [he] would have to get vaccinated or be terminated."  Proposed Second Am.

Compl. (SAC) ¶ 27.  Hassett "notified United that he did not believe unpaid leave

without benefits was a reasonable accommodation."  *Id.* ¶ 30.

Hassett returned to full-time status at United on approximately April 20, 2022,

after United ended its mandatory vaccination policy.  Although Hassett ultimately

returned to work, he alleges that United's policy deprived him of pay and benefits and

also required him to incur extra costs and complete additional training.

In October 2023, Hassett filed suit, alleging that United discriminated against him

on the basis of religion "[b]y refusing an accommodations [sic] for Plaintiff's faith" in

violation of Title VII and the ACRA.  First Am. Compl. (FAC) ¶ 52.  The Court granted

United's motion to dismiss the claims because Hassett's complaint contained virtually

no detail about his religious beliefs or how they conflicted with United's vaccination

requirement.[1]  *See Hassett*, 2024 WL 1556300, at *3.  The Court further noted that

Hassett had not responded to United's argument that it did not take "any alleged

adverse action with the motive of avoiding the need to accommodate his religious

practice."  *Id.* at *4 (quoting Def.'s Mot. to Dismiss at 9).  The Court noted, however, that

"[o]ne reasonably might question" United's basis for that argument.  *Id.*  The Court

---

[1] In addition to Hassett's religious discrimination claims, he asserted disability discrimination and retaliation claims.  The Court dismissed these claims with prejudice and thus they are no longer at issue.

2

dismissed the claims but gave Hassett the opportunity to file a motion for leave to file an amended complaint stating at least one viable claim. Hassett then filed a proposed second amended complaint reasserting a Title VII claim and an ACRA claim based on United's alleged failure to accommodate his religious beliefs.

### Discussion

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). In evaluating futility, the Court applies "the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022) (internal quotation marks omitted). To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.*

### A.     Title VII religious discrimination

Hassett alleges that United discriminated him on the basis of religion by refusing to provide a reasonable accommodation to its vaccination policy. "Title VII forbids employment discrimination on account of religion." *EEOC v. Walmart*, 992 F.3d 656,

658 (7th Cir. 2021), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 447 (2023).

Title VII defines the term "religion" to include "all aspects of religious observance and

practice, as well as belief, unless an employer demonstrates that he is unable to

reasonably accommodate to an employee's or prospective employee's religious

observance or practice without undue hardship on the conduct of the employer's

business."  42 U.S.C. § 2000e(j).  "The Supreme Court said that '[t]he intent and effect

of this definition was to make it an unlawful employment practice . . . for an employer

not to make reasonable accommodations, short of undue hardship, for the religious

practices of his employees and prospective employees.'"  *Kluge v. Brownsburg Cmty.*

*Sch. Corp.*, 64 F.4th 861, 880 (7th Cir. 2023), *vacated on other grounds*, No. 21-2475,

2023 WL 4842324 (7th Cir. July 28, 2023) (quoting *Trans World Airlines, Inc. v.*

*Hardison*, 431 U.S. 63, 74 (1997)).  To make out a prima facie case of a Title VII failure-

to-accommodate claim, "an employee must demonstrate that: (1) an observance or

practice that is religious in nature, and (2) that is based on a sincerely held religious

belief, (3) conflicted with an employment requirement, and (4) the religious observance

or practice was the basis or a motivating factor for the employee's discharge or other

discriminatory treatment."  *Id.* at 883.

### 1.     Forfeiture and motive

United first argues that Hassett has "forfeited his religious discrimination claims

. . . due to his failure to respond to United's prior arguments seeking their dismissal."

Def.'s Resp. at 3.  The Court disagrees.  In its order on United's motion to dismiss, the

Court expressly stated that it dismissed some of Hassett's claims with prejudice.  But it

granted Hassett the opportunity to attempt to replead his failure-to-accommodate theory

of Title VII discrimination.  The Court sees no basis for concluding that Hassett

"abandoned" this theory of liability.  Def.'s Resp. at 3.

United cites to the following statement in the Court's previous order in support of

its argument:

> United notes that it is unclear whether Hassett alleges a disparate
> treatment theory of religious discrimination in addition to his failure-to-
> accommodate theory.  In his response, Hassett neither mentions a
> disparate treatment claim nor responds to United's arguments why any
> such claim must be dismissed.  The Court therefore concludes that
> Hassett has forfeited any disparate treatment theory of liability for religious
> discrimination.

*Hassett*, 2024 WL 1556300, at *3.  But United's reliance on this footnote is misplaced.

The Court made clear that it was distinguishing a "disparate treatment" theory of Title

VII liability from a "failure-to-accommodate" theory.  That is because, based on Hassett's

original complaint, it was unclear whether he was alleging not only that United failed to

accommodate him, but also that United intentionally discriminated against him because

of his religious beliefs—in other words, that United adopted and/or enforced its

vaccination policy "at least in part 'because of,' not merely 'in spite of,' its adverse

effects" on Hassett's religious practice.  *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256,

279 (1979).  The Court referred to this theory of liability as a "disparate treatment" claim

for simplicity.  Hassett correctly points out in his motion for leave to amend, however,

that the Supreme Court has said that failure-to-accommodate claims are classified as a

subset of "disparate treatment" claims under Title VII.  *See EEOC v. Abercrombie &*

*Fitch Stores, Inc.,* 575 U.S. 768, 775 (2015).  The bottom line is that Hassett has

consistently pursued this case on a failure-to-accommodate theory and has now

clarified that "[t]his case is indeed proceeding solely on a 'failure to accommodate

religious beliefs' theory, and not a separate theory that United is intentionally targeting Plaintiff motivated by particular discriminatory animus aimed at his specific religious beliefs." Pl.'s Mot. to Amend at 4. The Court therefore declines to find that Hassett has forfeited or abandoned his Title VII religious discrimination claim, and there is no basis for reading the Court's footnote in the previous order to imply otherwise.

Along similar lines, United argues that the Court should deny leave to amend because Hassett has not responded to its argument that it "did not take any alleged adverse action with the motive to discriminate against Hassett's religious practice." Def.'s Resp. at 4. Specifically, United argues that it lacked the requisite "motive" because its COVID-19 vaccination policy was a neutral policy that applied equally to all employees and that the policy was announced before Hassett made United aware of his religious beliefs. United argues that its policy therefore could not have been motivated by Hassett's religious practice specifically. United cites to the Court's statement in its previous order that "Hassett fail[ed] to respond to United's motive arguments, which span multiple paragraphs in its brief, and thus he has forfeited the point." *Hassett*, 2024 WL 1556300, at *4. United asserts that "[b]ased on this Court's ruling, Hassett has . . . forfeited any response to United's 'motive' arguments." Def.'s Resp. at 4 (internal citation omitted).

The Court disagrees. Again, the Court's original order must be read in context. If Hassett was attempting to argue that United intentionally targeted him because of some sort of prejudice or antagonism towards his religious beliefs, then United's "motive" in the sense of its reasoning behind the implementation and timing of their COVID-19 vaccination policy would be central to his claim. But Hassett has now clarified that he is

proceeding on a failure-to-accommodate theory of liability. As far as "motive" goes at this stage, Hassett need only plausibly allege that his "religious observance or practice was the basis or a motivating factor for the . . . discriminatory treatment." *Kluge*, 64 F.4th at 883. In this case, Hassett has plausibly alleged that United placed him on unpaid leave without benefits because of his "religious observance or practice" of refusing the COVID-19 vaccination. That is all that is necessary in terms of "motive" for a failure-to-accommodate claim. Hassett has not forfeited this point. *See, e.g.*, Pl.'s Mot. to Amend at 5–8 (arguing that he has satisfied the required elements for a failure-to-accommodate claim, including the "motivating factor" element). Moreover, United's arguments clearly contradict well-settled Supreme Court precedent on Title VII failure-to-accommodate claims. In *EEOC v. Abercrombie & Fitch Stores*, 575 U.S. 768 (2015), the Supreme Court held that a Muslim plaintiff who wore a religious headscarf stated a Title VII claim where the defendant declined to hire her because it did not want to make an exception to its neutral no-headwear policy. Abercrombie advanced an almost identical argument to the one that United pursues in this case, arguing that it did not "treat religious practices less favorably than similar secular practices." *Id.* at 775. The Supreme Court rejected that position:

> Abercrombie's argument that a neutral policy cannot constitute "intentional discrimination" may make sense in other contexts. But Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual ... because of such individual's" "religious observance and practice." An employer is surely entitled to have, for example, a no-headwear policy as an ordinary matter. But when an applicant requires an accommodation as an "aspec[t] of religious ... practice," it is no response that the subsequent "fail[ure] ... to hire" was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*Id.* The Court therefore declines to dismiss Hassett's claim on this basis.

Finally, to the extent that United argues that Hassett fails to state a claim because it offered him a reasonable accommodation, the Court disagrees. Hassett alleges that United's only proposed accommodations were "72 months of unpaid leave without benefits," SAC ¶ 66, or reassignment to other out-of-state positions that were not "accessible" to him due to location and cost, *id.* ¶¶ 40–41. United may dispute Hassett's characterization of its proposed accommodations as a factual matter, but that is not an appropriate basis for dismissal at the pleading stage.

### 2. Religious belief

United also argues that the Court should deny leave to amend because the proposed second amended complaint fails to plausibly allege that Hassett's "religious practice—rather than his individual secular concerns—is the basis for his objection to vaccination." Def.'s Resp. at 8. "In the Seventh Circuit, the test for whether a sincerely held belief qualifies as religious for Title VII purposes is whether it 'occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God,'" such as beliefs that involve "matters of the afterlife, spirituality, or the soul, among other possibilities." *Guthrie-Wilson v. Cook County*, No. 23 C 362, 2023 WL 8372043, at *2 (N.D. Ill. Dec. 4, 2023) (quoting *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013)). To evaluate a Title VII failure-to-accommodate claim, a court must conduct "a holistic assessment of the terms of the employee's exemption request, with the controlling inquiry at the pleading stage being whether the employee plausibly based her vaccination exemption request at least in part on an aspect of her religious belief or practice." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024).

The Court agreed with United's argument with respect to the first amended complaint at issue in the Court's previous decision.  That version of the complaint stated only that Hassett "submitted a religious exemption request . . . based on sincerely-held religious beliefs as a Christian," FAC ¶ 13, and that he "holds sincere Christian beliefs, *inter alia*, against getting the COVID-19 vaccine, of which beliefs United was aware." *Id.* ¶¶ 51, 73.  The Court explained that these cursory allegations were insufficient because there was "no self-evident connection between Christianity and the employment practice that Hassett opposed."  Hassett had not, for example, described "any religious tenet which [was] offended" or "the nature of the conflict" in his complaint. *Hassett*, 2024 WL 1556300, at *3.  As a result, it was "impossible to gauge whether [Hassett's beliefs] [were] plausibly 'rooted in religious belief' or whether they [were] 'a matter of personal preference' based on 'secular considerations.'" *Id.* at *4 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).  The Court also noted that this problem was exacerbated by the fact that "there [was] some evidence that Hassett's opposition to the vaccination was based on secular concerns." *Id.*  The Court therefore concluded that Hassett had not alleged sufficient facts to support a plausible inference that United had violated Title VII.

In his proposed second amended complaint, Hassett has addressed these deficiencies by alleging additional facts regarding the basis for his religious objection to receiving the COVID-19 vaccination.  Specifically, Hassett attached a letter that he alleges he provided to United that contains additional detail about his beliefs.  The letter states, in relevant part:

As requested here is a short explanation of my religious beliefs.  [. . .]

9

> Someday I will have to stand before Christ and justify what I've done. That list will not include willingly being injected with fetal cell lines or a product of fetal cell line research. Fetal cell lines come from aborted babies and my Biblical interpretation is that is murder. Even before the mandate my wife, Thia, and I directed our attorney to modify our health care power of attorneys to include a Do Not Vaccinate statement. [. . .]

> God has mandated that I must not be vaccinated due to the use of fetal cell lines and other reasons I have left out for brevity. I must obey God rather than man.

SAC, Ex. A. The letter also quotes several Bible verses from the New American Standard Bible such as "For Thou didst form my inward parts; Thou didst weave me in my mother's womb" and "You shall not murder." *Id.*

The Court concludes that Hassett has plausibly alleged that his refusal to receive the COVID-19 vaccine was based on a sincerely held religious belief against willingly receiving a vaccination that is "a product of fetal cell line research." *Id.* That is sufficient to satisfy the first two elements of a failure-to-accommodate claim. *See Passarella*, 108 F.4th at 1009 (holding that a plaintiff stated a claim under Title VII where her vaccination exemption request "connect[ed] her objection to vaccination with her Christian beliefs regarding the sanctity of the human body").

United cites to decisions from other district courts that have held that beliefs similar to Hassett's are not "religious" in nature. *See, e.g.*, *Kiel v. Mayo Clinic Health Sys. Se. Minn.*, 685 F. Supp. 3d 770, 784 (D. Minn. 2023), *rev'd and remanded sub nom. Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024). ("A religious opposition to abortion is different from an opposition to vaccines that were potentially developed using a fetal cell line."). The Court respectfully disagrees that such fine-grained distinctions are appropriate at the motion-to-dismiss stage. *See Passarella*, 108 F.4th at 1011 ("Perhaps above all else, then, one guidepost is clear: "[c]ourts should

not undertake to dissect religious beliefs . . . because [they] are not articulated with the clarity and precision that a more sophisticated person might employer." (quoting *Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 715 (1981))). At this stage, Hassett has sufficiently alleged that he sincerely believes refusing the COVID-19 vaccination is his religious obligation and not just a secular moral imperative or preference.

United also argues that Hassett's beliefs do not qualify as "religious" for Title VII purposes because he included statements such as "I must obey God rather than man" that could be read to imply "a blanket privilege to follow his own individual standards." Def.'s Resp. at 9. But United's approach narrowly focuses on some of Hassett's statements while ignoring others, such as his abortion-related beliefs, that are more tethered to specific religious tenets. The Court cannot engage in this type of weighing of the evidence on a motion to dismiss. Given the specific abortion-related beliefs that Hassett has articulated, the Court does not believe that the allegations in Hassett's second amended complaint are comparable to cases in which plaintiffs essentially claim that their religion requires them to be able to do whatever they believe is best. *See, e.g.*, *Guthrie-Wilson*, 2023 WL 8372043, at *2 ("[A]lthough plaintiff purports to ground her refusal to receive the Covid-19 vaccine in her faith as a Seventh Day Adventist, she identifies no specific religious tenet that conflicts with Covid-19 vaccination, citing only the broad principle that she must 'practice a healthy lifestyle and abstain from anything that could bring her harm.'"); *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 492 (3d Cir. 2017) (affirming the dismissal of a Title VII claim because the Buddhist plaintiff's belief that "the flu vaccine may do more harm than good" was "a medical belief, not a religious

11

one" under Title VII).

United points to the fact that Hassett's letter and complaint also reference secular concerns about the safety of the vaccine. But the fact that Hassett's religious views may overlap with his other opinions does not mean that he cannot state a claim under Title VII. *See Passarella*, 108 F.4th at 1010 ("[A] 'religious' objection can sound in both religious and non-religious terms."). If United wishes to argue that Hassett's exemption request was not motivated by religious concerns at all, that involves credibility determinations, which are not appropriate at the motion-to-dismiss stage. *See Passarella v. Aspirus, Inc.*, No. 22 C 287, 2023 WL 2455681, at *7 (W.D. Wis. Mar. 10, 2023) (reversed on other grounds) ("With the benefit of discovery, [the defendant employer] may yet be able to show that [the plaintiff's] anti-vaccine beliefs are really a matter of medical judgment, politics, or some other personal conviction. But on a motion to dismiss, where the court must credit the allegations in the complaint, [the plaintiff] has adequately pleaded that her objection to the COVID vaccine is a religious one . . . ."). The Court concludes that Hassett has stated a claim under Title VII.

## B.   ACRA claim

Hassett's proposed second amended complaint also asserts a claim under section 14-11463 of the Arizona Civil Rights Act for failure to accommodate his religion. The parties agree that "there are no substantive differences at this stage" between the standard for stating a Title VII religious discrimination claim and an ACRA religious discrimination claim." Pl.'s Mot. to Amend at 8. But United argues that Hassett's ACRA claim fails for the additional reason that the ACRA does not apply extraterritorially. The Court did not reach this argument in its previous decision on United's motion to dismiss

because it concluded that Hassett failed to state an ACRA claim for other reasons. United now renews its argument regarding extraterritoriality. United contends that because "Hassett flies out of United's Hub in Houston Texas" and "United is an Illinois resident with its principal place of business in Illinois," the ACRA does not apply. Def.'s Resp. at 14. Hassett argues that because he is an Arizona resident, he is entitled to the protections of the ACRA. He also argues that United's argument fails because it is subject to personal jurisdiction in Arizona.

"It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). Similarly, when interpreting state law, courts presume that "the statutes of a state have no force beyond its boundaries." *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 775 (N.D. Ill. 2020) (quoting *Oman v. Delta Air Lines, Inc.*, 889 F.3d 11075, 1080 (9th Cir. 2018). This default rule of statutory interpretation is commonly referred to as the presumption against extraterritorial application. In the employment context, this doctrine implies that the protections of an individual's home country or state are not presumed to follow that individual if they seek work across a state or federal border. *See, e.g.*, *Arabian Am. Oil Co.*, 499 U.S. at 259 (holding that Title VII protections did not cover U.S. citizens employed by U.S. companies in foreign countries).[2] To overcome the presumption against extraterritorial application, the statute must "clearly express[ ]" that it applies extraterritorially. *Id.* at 248. Thus, unless the ACRA clearly states otherwise,

---

[2] Congress later amended Title VII to include a clearly expressed affirmative extension of protections to United States citizens working abroad. *See* 42 U.S.C. § 2000e(f).

its protections would not reach Hassett's employment with United based in Texas.

The Court will first address Hassett's argument regarding personal jurisdiction. The concept of extraterritoriality does not involve "jurisdiction" in the sense of a court's constitutional and/or statutory authorization to hear a case or a litigant's ability sue a defendant in a given state. United is not raising any objections to this Court's *authority* to rule on Hassett's claim asserting a cause of action under Arizona law. Nor is United asserting that, because this case is pending before this Court in the Northern District of Illinois, Arizona law cannot govern. Rather, the question is whether the ACRA, as written, permits Hassett to sue for conduct that United asserts did not occur in Arizona. Hassett's arguments that personal jurisdiction is proper therefore are not relevant.

Turning to Hassett's other arguments, the Court begins by noting that Hassett has not disputed, as a factual matter, United's assertion that his employment is based out of Texas. Instead, he argues that he can assert an ACRA claim because he "resides in Arizona." Pl.'s Resp. to Def.'s Mot. to Dismiss at 6. He also cites to the fact that section 41-1402(6) "grants the Arizona Attorney General's Civil Rights Division to, *inter alia*, 'Make periodic surveys of the existence and effect of discrimination . . . in the enjoyment of civil rights by <u>any person within this state</u> as prescribed by this chapter.'" Pl.'s Resp. to Def.'s Mot. to Dismiss at 6–7. As discussed, however, the fact that he resides in Arizona and that the ACRA protects "person[s] within [Arizona]" from discrimination is not sufficient to show that the Arizona legislature intended these protections to follow Arizona residents engaging in out-of-state employment activities. Hassett has not cited to any provision of the statute that unambiguously establishes that it applies extraterritorially. "When a statute gives no clear indication of an extraterritorial

14

application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).

Finally, Hassett argues that "at no time did the Arizona Attorney General's Civil Rights Division refuse to investigate his charge on the basis that ACRA did not cover his claims." Pl.'s Resp. to Def.'s Mot. to Dismiss at 6. Even if the Court were to agree that the state agency's views are entitled to deference, nothing suggests that the state agency agrees that the ACRA applies in this case. First, Hassett's ACRA charge, which he has appended to his complaint, provided no indication that he was employed outside of Arizona. *See* Proposed SAC, Ex. B. Second, the state agency right-to-sue letter stated that it was "still investigating" the charge and was "not expressing an opinion on the merits of [Hassett's] allegations or the likely outcome of any lawsuit." Proposed SAC, Ex. C. The Court therefore concludes that the ACRA's nondiscrimination provisions do not apply to the conduct at issue in this case.

## Conclusion

For the reasons stated above, the Court grants the plaintiff's motion for leave to file a second amended complaint [dkt. no. 61] with respect to his Title VII failure-to-accommodate religious discrimination claim, but denies the motion with respect to his ACRA religious discrimination claim because amendment would be futile. The plaintiff is directed to file by August 26, 2024 a revised second amended complaint that asserts only the Title VII claim. The parties are directed to confer and attempt to agree upon a discovery and pretrial schedule and are to file a joint status report setting forth a proposed schedule by August 28, 2024. The case is set for a telephonic status hearing on September 5, 2024 at 8:50 a.m., using call-in number 650-479-3207, access code

980-394-33.

Date:  August 16, 2024

MATTHEW F. KENNELLY
United States District Judge